UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BRITTANI M. JOHNSON, | CASE NO. 3:23-CV-01529-JGC |
| Plaintiff, | JUDGE JAMES G. CARR |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION |
| Defendant. | |

INTRODUCTION

Plaintiff Brittani M. Johnson challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 7, 2023, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated Aug. 7, 2023). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Ms. Johnson filed for DIB on June 11, 2021, alleging a disability onset date of June 1, 2021. (Tr. 197). The claims were denied initially and on reconsideration. (Tr. 223, 229). Ms. Johnson then requested a hearing before an Administrative Law Judge. (Tr. 246). Ms. Johnson (represented by counsel) and a vocational expert (VE) testified on August 15, 2022. (Tr. 129). On

1

September 20, 2022, the ALJ determined Ms. Johnson was not disabled. (Tr. 122). The Appeals

Council denied Ms. Johnson's request for review on June 12, 2022, making the hearing decision

the final decision of the Commissioner. (Tr. 1; *see* 20 C.F.R. §§ 404.955, 404.981). Ms. Johnson

timely filed this action on August 7, 2023. (ECF #1).

FACTUAL BACKGROUND

## I.        Personal and vocational evidence

Ms. Johnson was 27 years old on the alleged onset date and 28 years old at the

administrative hearing. (Tr. 134-135). She completed high school. (*Id.*). Before the alleged onset of

disability, Ms. Johnson had performed two jobs, first as a worker at a Subway sandwich store and

later as a dietary aide in Mercy Health Hospital's kitchen, taking patient orders, preparing food,

and delivering meals. (Tr. 137-38).

## II.       Relevant medical evidence

Ms. Johnson was born with cerebral palsy[1] affecting her entire left side. (Tr. 438, 943). This

has left her with a hemiplegia[2] of her left upper and left lower extremities. (Tr. 943). She has

bilateral carpal tunnel in her hands as well.[3] (*Id.*). Ms. Johnson was diagnosed with fibromyalgia in

---

[1]        Cerebral palsy is a group of disorders affecting the brain's cerebral motor cortex and causing problems with muscle movement, balance, and posture. *Cerebral Palsy*, *MedlinePlus*, https://medlineplus.gov/cerebralpalsy.html (last accessed May 31, 2024).
[2]        Hemiplegia is a severe or complete loss of strength in the arm, leg, and sometimes face on one side of the body. *Hemiplegia/hemiparesis*, *National Institute of Health*, https://www.ncbi.nlm.nih.gov/medgen/852561 (last accessed May 28, 2024). The multiple medical sources disagree in whether Ms. Johnson is assessed to have hemiplegia or hemiparesis and both terms are used throughout the record. "Hemiplegia" refers to a severe or complete loss of strength, whereas "hemiparesis" refers to a relatively mild loss of strength. *Id.*
[3]        Carpal tunnel syndrome is a group of conditions caused by a nerve in the wrist becoming squeezed resulting in numbness, tingling, weakness, or pain in the wrist or hand. *Carpal Tunnel Syndrome*, *MedlinePlus*, https://medlineplus.gov/carpaltunnelsyndrome.html (last accessed May 31, 2024). Carpal tunnel syndrome is bilateral when it is present in both wrists.

2

2018.[4] (*Id.*). She was diagnosed with interstitial cystitis[5] in 2014 and has a history of inflammatory bowel syndrome that has left her with abdominal pain. (*Id.*). Ms. Johnson has had a history of seizures since childhood. (Tr. 438). Ms. Johnson has been diagnosed with anxiety and depression. (Tr. 943).

On November 5, 2020, Ms. Johnson consulted with Prasad Policherla, M.D., a neurologist, for her complaints of clumsiness, focal sensory loss, and focal weakness, involving the left arm and leg. (Tr. 738-39). Dr. Policherla's neurological examination revealed left facial asymmetry and weakness. (Tr. 748). Dr. Policherla's examination of Ms. Johnson's motor functions revealed a left hemiparesis, four-out-of-five strength with spasticity in her upper and lower extremities, and decreased rapid alternating and repetitious movements on her left side. (Tr. 748-49). Dr. Policherla's examination of Ms. Johnson's sensory functions revealed an impaired sensory response to light touch, pinprick, position and vibration on her left upper and lower extremities. (Tr. 749). Dr. Policherla also assessed Ms. Johnson's gait to be slow and unsteady. (*Id.*). Dr. Policherla advised Ms. Johnson to use a quad cane as needed and avoid driving, working at heights or with heavy machinery, and climbing ladders. (Tr. 753-54).

On December 3, 2020, Ms. Johnson consulted Edward Goldberger, M.D., a rheumatologist, for a second opinion on her fibromyalgia diagnosis. (Tr. 438). Dr. Goldberger assessed Ms. Johnson as "[f]ists full, grip, and pinch strength good." (Tr. 439). Dr. Goldberger's

---

[4]     Fibromyalgia is chronic condition with a currently unknown cause that causes pain all over the body, fatigue, and other symptoms. *Fibromyalgia*, *MedlinePlus*, https://medlineplus.gov/fibromyalgia.html (last accessed May 31, 2024).

[5]     Interstitial cystitis is a condition that causes discomfort or pain in the bladder and a need to urinate frequently and urgently and can cause pain in some people. *Interstitial Cystitis*, *MedlinePlus*, https://medlineplus.gov/interstitialcystitis.html (last accessed May 31, 2024).

examination of Ms. Johnson's motor function revealed a motor strength five out of five in right upper and lower extremities and a four plus/minus to five minus out of five in her left upper and lower extremities, with an inability to flex her left foot. (*Id.*). Dr. Goldberger also found Ms. Johnson to have an impaired sensory response to pinpricks on her left upper and lower extremities. (*Id.*).

On March 10, 2021, Ms. Johnson returned to Dr. Policherla for a follow-up examination. (Tr. 593). Dr. Policherla's examination of Ms. Johnson's motor functions revealed a left hemiparesis, four out of five strength with spasticity in her upper and lower extremities, and decreased rapid alternating and repetitious movements on her left side. (Tr. 604). While those results mirrored Dr. Policherla's examination in November, Dr. Policherla's examination in March also revealed a mild atrophy and drift on Ms. Johnson's left side. (*Compare* Tr. 604 *and* Tr. 748-49). Dr. Policherla's examination of Ms. Johnson's sensory functions revealed an impaired sensory response to light touch, pinprick, position, and vibration on her left upper and lower extremities. (Tr. 605). This was the same result as the November examination. (*Compare* Tr. 605 and Tr. 749).

### III.    Relevant medical opinions

On August 17, 2021, consultative examiner Ryan Lakin, M.D., examined Ms. Johnson as part of her disability application (Tr. 943). Dr. Lakin reported Ms. Johnson was born with cerebral palsy and has hemiplegia in her left arm and leg. (*Id.*). On examination, Dr. Lakin assessed Ms. Johnson as having a limp, decreased fine and gross motor skills in her left hand, and four-out-of-five strength on all muscles on her left side. (Tr. 945-46). Dr. Lakin opined that Ms. Johnson could lift and carry five pounds for two to six hours per day and ten pounds two hours per day and that, with regular breaks, she can sit continuously and walk occasionally. (Tr. 945).

4

On September 22, 2021, in connection with the initial state agency determination on Ms. Johnson's disability application, state agency medical consultant Sai Nimmagadda, M.D., evaluated Ms. Johnson based on a review of the medical record. (Tr. 205). Among other things, Dr. Nimmagadda opined that Ms. Johnson has limitations in fine and gross manipulation on her left side. (Tr. 204). Dr. Nimmagadda explained the manipulative limitation as "[left upper extremity] fine and gross motor skills decreased. Atrophy with spasticity of the [left] upper and lower musculature. Decreased pinprick [left upper extremity] and [left lower extremity]. Gross and fine manipulation should be limited to occasionally [left upper extremity]." (*Id.*).

On April 13, 2022, in connection with Ms. Johnson's request for reconsideration, state agency medical consultant Leslie Green, M.D., also evaluated Ms. Johnson based on a review of the medical record. (Tr. 217). Dr. Green reached the same conclusions as Dr. Nimmagadda regarding Ms. Johnson's manipulative limitations in fine and gross manipulation on her left side. (Tr. 216). Dr. Green offered the same explanation for the manipulative limitation as Dr. Nimmagadda. (*Id.*).

In November 2021, state agency psychological consultant, Daniel Watkins, Ph.D., performed a psychological evaluation on Ms. Johnson as part of her disability application. (Tr. 953). Dr. Watkins assessed Ms. Johnson as suffering from depression and anxiety, both of which she is receiving treatment. (Tr. 957). Dr. Watkins opined Ms. Johnson can understand, remember, and carry out instructions; sustain attention and concentration; respond appropriately to supervision; and cope with a low-pressure work setting. (Tr. 958).

## IV.    Relevant testimonial evidence

On August 15, 2022, Ms. Johnson participated in a remote hearing via teleconference before the ALJ. (Tr. 129, 291). Previously, Ms. Johnson had worked as a dietary aide for Bon

Secours Mercy Health in the hospital kitchen from 2016 to 2021. (Tr. 135, 137). From 2015 to 2016, Ms. Johnson worked in a Subway sandwich store while in high school. (Tr. 137-38).

Ms. Johnson testified how she is limited to one hand and that she cannot hold a fork, a cup, or a coin with her left hand. (Tr. 144). Ms. Johnson testified she can barely assist with household chores anymore and her family had to hire a housekeeper to come once a week. (Tr. 141). However, she testified she helps sort the laundry, though she cannot lift the laundry to load it or bend down to take the laundry out. (*Id.*). Ms. Johnson aids in cooking by stirring with her right hand, though her bilateral carpal tunnel causes her pain while stirring. (*Id.*). She cannot use knives without risk of cutting herself or lift pots without a risk of burning herself. (*Id.*). Ms. Johnson can get dressed one-handed, but often needs help. (*Id.*). But she cannot help her children get dressed one-handed. (Tr. 143). Ms. Johnson also walks with a limp from her cerebral palsy that causes her to trip. (Tr. 154-55).

Ms. Johnson testified her condition worsened in June 2021, when her fibromyalgia and carpal tunnel caused increasing pain. (Tr. 144-45). Her interstitial cystitis also worsened, and the conditions together caused pain throughout her body. (Tr. 146). Her interstitial cystitis would often send Ms. Johnson to the restroom, as often as 20 to 30 times a day. (Tr. 148). When she worked at Subway, Ms. Johnson was one of two employees and if there was a line when she needed to use the bathroom, she had "to sit there and suffer until there was a break in the line." (Tr. 149). Sometimes she would have accidents and had to buy disposable underwear and pack spare clothes to work. (*Id.*). Ms. Johnson has yet to find an effective treatment, despite medication and annual maintenance surgeries. (Tr. 150). Ms. Johnson also experiences seizures where she will stare for long periods of time and cannot hear. (Tr. 154).

6

The VE classified Ms. Johnson's job with Subway as a sandwich maker, DOT 317.664-010, which is classified as an unskilled job requiring medium exertion but was performed by Ms. Johnson at the light exertion level. (Tr. 159). The VE classified her second job at Mercy Health as a dietary aide, DOT 319.677-014, which is classified as requiring medium exertion. (*Id.*). The ALJ posed to the VE a hypothetical individual with Ms. Johnson's age and education who can perform light work; can sit for six hours and stand and walk for four hours in an eight-hour workday; can occasionally climb ramps and stairs but not ropes or ladders; can occasionally balance, crouch, kneel or stoop; can occasionally handle and finger and frequently feel with her left hand; can frequently handle and finger with her right hand; and cannot work around unprotected heights, sharp implements, or moving mechanical machinery; and can carry out instructions. (Tr. 160-61). The VE opined that such a person could not perform Ms. Johnson's past work experience because the manipulative limitations and the inability to use sharp objects preclude any of Ms. Johnson's prior jobs. (Tr. 161). The VE testified there are no positions available for this hypothetical person at the light exertion level. (*Id.*). The VE identified two positions available at the sedentary level, a surveillance-systems monitor and a call-out operator, that together comprise approximately 5,400 positions. (*Id.*). The ALJ changed the hypothetical person to one who can frequently handle and finger with the left upper extremity (the same as the right upper extremity). (*Id.*). The VE concluded light work was still precluded because of the limitation on standing and walking, but at the sedentary level, there would be other jobs that can be performed with the hypothetical person's limitations. (Tr. 162). Specifically, the VE identified inspector, bench assembler, and packager, which together represent approximately 50,500 positions in the national economy. (*Id.*). Finally,

the VE noted those jobs could not be performed one-handed and require occasional use of both hands. (Tr. 165).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant

could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Johnson had not engaged in substantial gainful activity since June 1, 2021. (Tr. 105). At Step Two, the ALJ identified the following severe impairments: "seizures; cerebral palsy; fibromyalgia; bilateral carpal tunnel syndrome; interstitial cystitis, status post cysto hydrodistension; irritable bowel syndrome; and psychological conditions variously described as: depressive disorder, anxiety disorder and neurocognitive disorder." (*Id.*).

At Step Three, the ALJ found Ms. Johnson does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Tr. 106). Specifically, the ALJ considered Listings 1.18 (abnormality of a major joint(s) in any extremity, 5.06 (inflammatory bowel disease), 11.02 (epilepsy) and 11.07 (cerebral palsy). (*Id.*).[6]

The ALJ determined Ms. Johnson did not meet the requirements for Listing 1.18 because Ms. Johnson did not use a walking aide nor a wheeled and seated mobility device, there is no evidence of an inability to use both upper extremities, and the examinations do not support a complete non-use of the left hand as Ms. Johnson alleged. (Tr. 107). The ALJ determined Ms. Johnson did not meet the requirements for Listing 5.06 because "Although the undersigned has found that [Ms. Johnson]'s [inflammatory bowel disease] is severe, the record does not show that

---

[6]     The ALJ also considered Social Security Ruling (SSR) 12-2p that guides the analysis of fibromyalgia. (Tr. 109). While the ALJ's decision does not discuss SSR 12-2p expressly, the ALJ mentions Ms. Johnson's fibromyalgia symptoms multiple times in the decision and Ms. Johnson does not challenge the ALJ's assessment of her fibromyalgia.

the severity of this condition meets or equals the criteria of [L]isting 5.06." (Tr. 106-07). The ALJ determined Ms. Johnson did not meet the requirements for Listing 11.02 because Ms. Johnson's seizures have been under good control with anti-seizure medication. (Tr. 108-09).

The ALJ determined Ms. Johnson did not meet the requirements for Listing 11.07 because Ms. Johnson does not have an extreme limitation in her ability to rise from a seated position, balance while standing or walking, or use her upper extremities and does not use a walking device, though the record shows some positive findings as to the left upper and left lower extremities. (Tr. 109). The ALJ further concluded the record lacked evidence of a left foot drop or marked limitations in understanding, remembering, or applying information; interaction with others; concentrating, persisting, or maintaining pace; adapting; communicating; hearing; or seeing. (*Id.*).

The ALJ determined Ms. Johnson's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: [Ms. Johnson] can never climb ladders, ropes, or scaffolds or crawl; occasionally climb ramps and stairs, balance, crouch, kneel, and stoop. With the nondominant left upper extremity, she can frequently handle and finger and frequently feel. With the dominant right upper extremity, she can frequently handle and finger. With the bilateral upper extremities, she can frequently reach overhead. With the bilateral upper and lower extremities, she can occasionally push and/or pull and cannot operate foot controls with the left lower extremity. She can occasionally work around vibrations. She cannot work around unprotected heights, sharp unprotected implements, or unprotected moving mechanical machinery. She cannot perform any commercial driving. [Ms. Johnson] can understand, remember, and carry out simple, routine, repetitive tasks but not at a production rate pace such as required working on an assembly line. She can make judgments on simple work and respond appropriately to usual work situations where duties are generally stable, predictable, and short cycle and handle occasional changes in a routine work setting.

(Tr. 112).

At Step Four, the ALJ concluded Ms. Johnson is unable to perform any past relevant work with her RFC. The ALJ found Ms. Johnson has past relevant work experience as a dietary aide, which the Dictionary of Occupational Titles (DOT) classifies at the medium exertional level. (*See* Tr. 120) The ALJ found Ms. Johnson also has past relevant work experience as a sandwich maker, which the DOT classifies at the medium exertional level, but the ALJ determined Ms. Johnson performed at the light exertion level. (*Id.*). The VE testified that Ms. Johnson's past relevant work could not be performed with the ALJ's RFC because the manipulative limitations and limitation on exposure to sharp objects eliminated Ms. Johnson's past relevant work. (*Id.*).

At Step Five, the ALJ determined jobs exist in significant numbers in the national economy that Ms. Johnson can perform, including inspector, bench assembler, and packager. (Tr. 121). But the ALJ noted that while the objective record does not support limiting Ms. Johnson to the use of only one hand, the vocational expert testified that if she had such a limitation, then she could not perform those jobs. (*Id.*). Therefore, the ALJ found Ms. Johnson was not disabled. (Tr. 122).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.,*

11

966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an

12

accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); accord *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

Discussion

Ms. Johnson raises one issue for review: "The ALJ's conclusion that Plaintiff is able to frequently handle, finger, and feel with her left hand is not supported by substantial evidence." (ECF #7 at PageID 1155). Specifically, she argues the ALJ erred at Step Four in rejecting the consensus among the state agency medical consultants and Dr. Policherla (Ms. Johnson's treating neurologist) that Ms. Johnson was limited to occasionally (not frequently) using her left hand. (ECF #12 at PageID 1192-93). The Commissioner responds that substantial evidence supports the ALJ's decision. (ECF #10 at PageID 1186).

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). In doing so, an ALJ is not required to rely on medical opinion evidence to craft an RFC. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting plaintiff's argument that the ALJ is required "to base her RFC finding on a physician's opinion"). "A[n] RFC determination is a legal finding, not a medical determination, thus, an 'ALJ—not a physician—ultimately determines a claimant's RFC.'" *Peirce v. Saul*, No. 3:23-cv-0248, 2021 WL 606369, at *6 (N.D. Ohio Jan. 25, 2021) (quoting

13

*Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010)); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."). But while an ALJ is not bound to the conclusions of state agency medical consultants when determining a claimant's RFC, an ALJ may not ignore these opinions and must explain how persuasive they are. *See* 20 C.F.R. § 404.1520c(b); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

The ALJ determines the persuasiveness of a medical source's opinion using a five-factor analysis: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors the ALJ must consider. *Id.* § 404.1520c(b)(2); *see also Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *4 (S.D. Ohio Mar. 29, 2021). As such, the ALJ is required to "*explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

## I.     The ALJ properly evaluated the medical opinion evidence.

I begin with the ALJ's analysis of the findings of the consultative examiner, Dr. Lakin, and state agency medical consultants, Drs. Nimmagadda and Green. Ms. Johnson argues the ALJ improperly disagreed with these opinions. (ECF #7 at PageID 1173; ECF #12 at PageID 1194-95). This argument is without merit because the ALJ properly evaluated the medical evidence for supportability and consistency and supported the evaluation with substantial evidence.

14

The ALJ found the state agency medical consultants' conclusions that Ms. Johnson was limited to occasional gross and fine manipulation to be unpersuasive. The ALJ wrote:

> Dr. Lakin opined that [Ms. Johnson] could perform work at the sedentary exertional level with no limitation on sitting. This opinion is somewhat consistent with the examination findings. However, on examination [Ms. Johnson] was found to have reduced grip/grasp on the left upper extremity of 4/5. This finding, coupled with the overall record, supports additional nonexertional and environmental limitations as set forth in the above residual functional capacity assessment. As such, this opinion is found to be partially persuasive.
>
> The state agency medical consultants opined that the claimant could do work at the light exertional level except standing and walking four hours, occasional pushing and pulling with the left upper and lower extremities, occasional climbing of ramps and stairs, never climbing ladders, ropes or scaffolds, frequently balancing, stooping, kneeling, crouching and crawling, occasional gross and fine manipulation with the left upper extremity, and should avoid all exposure to hazards such as dangerous machinery and unprotected heights. These opinions are somewhat consistent with the overall record. However, the undersigned finds that the claimant is properly limited to work at the sedentary exertional level with greater limitations in postural activities to include balancing, crouching, kneeling, and stooping. The limitation to sedentary is supported by the objective record as well as the findings of Dr. Lakin as to the claimant's exertional ability as discussed above. Further, to accommodate the bilateral carpal tunnel as well as the effects of her other impairments on her right extremity, the undersigned has further limited the claimant to frequent handling and fingering with the right upper extremity, to frequent reaching overhead bilaterally with the upper extremities, and occasional pushing and pulling with the bilateral upper extremities. Conversely, however, the limitation to occasional gross and fine manipulation with the left upper extremity is not supported by the objective record. As noted above, examination findings document some limitation in use of the upper extremity but not to the degree alleged. Specifically, [Ms. Johnson] has no less than a 4/5 grip strength on the left side. She has negative Tinel & Phalen's signs.[7] Treatment records do not show objective findings relative to the left upper extremity that would support a

---

[7]     Tinel's sign is a tingling or pins-and-needles feeling experienced when a healthcare provider taps the skin over a nerve to assess if that nerve is compressed or damaged. *Tinel's Sign*, *Cleveland Clinic*, https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign (last accessed May 31, 2024). Phalen's test is a series of hand and wrist movements and positions that puts pressure on the medial nerve of the wrist to diagnose carpal tunnel syndrome. *Phalen's Test*, *Cleveland Clinic*, https://my.clevelandclinic.org/health/diagnostics/25133-phalens-test (last accessed May 31, 2024).

limitation to occasional gross and fine manipulation. Accordingly, this opinion is partially consistent with and supported by the overall record and therefore found to be partially persuasive.

(Tr. 118).

Based on this record, the ALJ properly analyzed the opinions for supportability and consistency with the record and cited the specific parts of the record the ALJ thought contradicted those opinions. The ALJ articulated that Dr. Lakin's medical examination revealed a four-out-of-five grip strength[8] on Ms. Johnson's left side and did not exhibit two certain diagnostic signs for carpal tunnel syndrome and that those facts did not support a limitation to only occasional use of the left hand. (Tr. 118). By doing so, the ALJ properly articulated that Dr. Lakin's opinion limiting Ms. Johnson to occasional use of her left hand was inconsistent with multiple pieces of objective medical evidence found in Dr. Lakin's examination. *See White v. Comm'r of Soc. Sec.*, No. 1:20-cv-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning.").

Drs. Nimmagadda and Green did not examine Ms. Johnson but evaluated her disability claim through a review of the medical record, including Dr. Lakin's examination. (Tr. 205, 217). Because Drs. Nimmagadda and Green based their conclusions on Dr. Lakin's examination, the ALJ's rationale that Dr. Lakin's opinion was not entirely consistent with the record applies equally

---

[8]     A four-out-of-five on the five-point grading system of medical function rates "good" muscle strength indicated by "an active [range of motion] against gravity and moderate resistance." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1.00 Musculoskeletal Disorders, Table 1—Grading System of Muscle Function).

to the conclusions of Dr. Nimmagadda and Dr. Green. Consequently, the ALJ properly evaluated this evidence as well. *See White*, 2021 WL 858662, at *21.

The ALJ also disagreed with the state agency consultants in Ms. Johnson's exertional limitation and the assessment of her mental health. For both, the ALJ's analysis followed a similar pattern to the analysis of Ms. Johnson's left hand. Although the state agency consulting physicians concluded Ms. Johnson was limited to working at the light exertional level, the ALJ concluded Ms. Johnson was limited to the sedentary exertional level. (Tr. 118). The ALJ based that difference on Ms. Johnson's postural limitations revealed in Dr. Lakin's examination. (*Id.*). The ALJ agreed with the state agency consulting psychologist's assessment of Ms. Johnson but, after considering the combined effects of pain, fatigue, and stress, the ALJ concluded Ms. Johnson faced greater limitations than assessed by the psychologist. (Tr. 119). In both these departures from the medical opinions, the ALJ offered substantial evidence for why those opinions were not entirely consistent with the record. Thus, reading the decision as a whole demonstrates the ALJ examined the medical evidence and carved specific contours in the RFC to accommodate Ms. Johnson's limitations.

For these reasons, I conclude that substantial evidence supports the ALJ's evaluation of the medical opinion evidence.

## II. The ALJ properly analyzed Dr. Policherla's findings.

Ms. Johnson next argues the ALJ erred by not considering the findings of Dr. Policherla, Ms. Johnson's treating neurologist. (ECF#7 at PageID 1171; ECF#12 at PageID 1193-94). This argument also lacks merit because the ALJ did consider Dr. Policherla's findings and evaluated those findings for supportability and consistency and supported the evaluation with substantial evidence.

Although the ALJ did not specifically analyze Dr. Policherla's examinations, the ALJ discussed that evidence, writing:

> The evidence includes objective test results and treatment notes dated prior to the claimant's alleged onset date (1F & portions of 2F, 3F, 4F, 8F & 10F).[9] While considered, the evidence does not provide pertinent information regarding the claimant's residual functional capacity as of June 1, 2021. Therefore, a detailed analysis of the evidence dated prior to June 1, 2021, is unwarranted. Nevertheless, the undersigned has considered all evidence in the record and notes that the residual functional capacity above accommodates all limitations supported by the medical record as a whole.

(Tr. 114). Where an ALJ explicitly states that all evidence in the record was considered and there is no evidence to the contrary, the Court presumes that the statement is true. *White v. Comm'r of Soc. Sec.*, No. 1:23-CV-1380, 2024 WL 1119314, at *10 (N.D. Ohio Mar. 14, 2024) (citing *NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021), and *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926)).

Even without the presumption, the decision indicates the ALJ considered Dr. Policherla's findings alongside the other medical evidence. Dr. Policherla's two examinations were consistent with the conclusions reached by Dr. Lakin's examination and Dr. Nimmagadda's and Dr. Green's reviews of the medical record. Dr. Policherla's examinations of Ms. Johnson's motor functions revealed a left hemiparesis, four-out-of-five strength with spasticity in her left upper and left lower extremities, and decreased rapid alternating and repetitious movements on her left side. (Tr. 604, 748-49). Dr. Lakin also assessed a hemiplegia and a four-out-of-five strength in Ms. Johnson's left upper and left lower extremities. (Tr. 943, 945-46). Dr. Nimmagadda and Dr. Green each came to similar conclusions when reviewing the medical record, including Dr. Lakin's examination.

---

[9]     Dr. Policherla's examinations and treatment notes are contained within Exhibit 4F.

(Tr. 204, 216). Thus, when the ALJ crafted the RFC by agreeing in part and disagreeing in part with the findings of Drs. Lakin, Nimmagadda, and Green discussed above, the ALJ also considered Dr. Policherla's findings. Similarly, when the ALJ discussed the reasons for finding the opinions of Dr. Lakin, Dr. Nimmagadda, and Dr. Green partly persuasive, the ALJ's analysis applies to Dr. Policherla's examination because all the medical sources reached similar findings in examining Ms. Johnson and similar conclusions about her ability to handle, finger, and feel with her left hand.

I thus find no basis to order remand on this issue.

**III.  Although substantial evidence does not support the ALJ's conclusion that Ms. Johnson's painting implied she could use her left hand more than she acknowledged, that error was harmless.**

Finally, Ms. Johnson argues the ALJ erred in relying on Ms. Johnson's statement that she could paint to conclude she had greater manipulative abilities in her left hand than she acknowledged. (ECF #7 at PageID 1171-73; ECF #12 at PageID 1198-99). The ALJ must assess the consistency of a claimant's statements concerning the intensity, persistence, and limiting affects of symptoms of an alleged disability. SSR 16-3p, 2017 WL 5180304 at *8-9. In evaluating the severity of symptoms, the ALJ must consider a variety of factors, including a claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). Among other requirements, the consistency determination must find support in the record. *See* SSR 16-3p at *10.

Ms. Johnson stated in her adult function report that she painted "when I get a chance," but did not paint as much as she had before her alleged disability. (Tr. 361). The ALJ then inferred from this statement "[t]his would suggest some ability to use both hands considering the need to open paint containers and handle supplies." (Tr. 107). The only evidence in the record about Ms. Johnson's painting is the adult function report because the ALJ did not ask Ms. Johnson about her painting hobby during the hearing. Nothing in the record describes how Ms. Johnson paints, how

she might use her left hand while painting if at all, or whether she can open paint containers or handle supplies with her left hand. Consequently, the record provides no support for the ALJ's conclusions that Ms. Johnson's painting suggests an ability to use both hands or that her painting hobby is inconsistent with her alleged disabilities.

That said, the ALJ's inference is harmless on the record presented. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005). Consequently, courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ providing one inaccurate reason may be harmless error where the ALJ articulated other valid reasons for discounting a claimant's subjective complaints. *Picone v. Comm'r of Soc. Sec.*, No. 5:22-CV-01339-CEF, 2023 WL 5043050, at *9 (N.D. Ohio June 23, 2023), *report and recommendation adopted*, 2024 WL 1325934 (N.D. Ohio Mar. 28, 2024).

Here, while the ALJ's inference lacked substantial evidence, that error is harmless because the ALJ articulated other valid grounds to support the RFC. The ALJ's inference was used in part in supporting the conclusion that Ms. Johnson's limitations were not as extensive as alleged and, consequently, she was not disabled. The prejudice to the ALJ's overall conclusion from the single inference is cabined because the ALJ did not rely solely on Ms. Johnson's reported painting to craft the RFC. Rather, it was one factor among many that were considered. The ALJ first articulated that Ms. Johnson could frequently handle, finger, and feel with her left hand while analyzing the medical evidence. The ALJ did not discuss Ms. Johnson's painting while doing so and the ALJ's

20

analysis of the medical evidence independently supports the RFC. *See Garcia v. Comm'r of Soc. Sec.*, No. 1:16 CV 2682, 2018 WL 838371, at *12 (N.D. Ohio Feb. 12, 2018) ("The undersigned finds, however, that even if this reason lacks support in the record, it is harmless because the ALJ's other reasons provide substantial evidence."). The ALJ discussed Ms. Johnson's painting when evaluating the credibility of her subjective complaints, not the medical evidence. Thus, there is no reason to believe the ALJ's evaluation of the medical evidence or the ALJ's conclusion that Ms. Johnson could frequently handle, finger, and feel with her left hand would be any different were the cause to be remanded to cure this inference. *See Picone*, 2023 WL 5043050, at *9 ("[A]n ALJ providing one inaccurate reason may be harmless error where the ALJ articulated other valid reasons for discounting a claimant's subjective complaints.").

Therefore, I decline to recommend remand based on this error.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: June 11, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R.**

Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).